1 | K&L GATES LLP
Benjamin Moore, WSBA #55526
2 | Rosemary Alito
925 Fourth Avenue
3 | Suite 2900
Seattle, Washington 98104-1158
4 | Tel: +1 206 370 6553

The Honorable James A. Goeke

5

6

7 | UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
8

9 | TYANNA AVERETT,

10 | Plaintiff,

11 | v.

12 | KADLEC REGIONAL MEDICAL
CENTER,

13

14 | Defendant.

No. 4:23-CV-05082-JAG

DEFENDANT'S STATEMENT OF
MATERIAL FACTS NOT IN
DISPUTE IN SUPPORT OF ITS
MOTION FOR SUMMARY
JUDGMENT

HEARING DATE: FEBRUARY 3,
2025
*WITHOUT ORAL ARGUMENT*

15

16

17

18    Pursuant to Local Civil Rule 56(c)(1), Defendant Kadlec Regional Medical

19 Center provides the following Statement of Material Facts Not In Dispute in

20 support of its Motion for Summary Judgment, concurrently filed.

21    **A.    Kadlec Regional Medical Center**

22    1.    Kadlec's nursing staff is unionized. The Washington State Nurses

23 Association is the collective bargaining representative for all regular full-time,

24 part-time, and per diem Registered Nurses employed at Kadlec's facilities.

25 Declaration of Rosemary Alito ("Alito Decl."), filed herewith, ¶ 9, Ex. H.

26

DEFENDANT'S STATEMENT OF
MATERIAL FACT - 1
CASE NUMBER 4:23-CV-05082-JAG

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

2.      Among the many services that Kadlec provides to the Richland community is its Birth Center. The Birth Center provides antepartum, labor and delivery, and postpartum care. Overall management of the nurses assigned to the Birth Center is the responsibility of the Nurse Manager. Deposition of Trinity Mugo ("Mugo Dep.") 29:7-14.[1]

3.      At all times relevant to this lawsuit, Trinity Mugo served as the Birth Center's Nurse Manager. Prior to becoming Nurse Manager in 2018, Ms. Mugo spent seven years as a nurse on the unit and three years as the unit's assistant nurse manager. Mugo Dep. 8:6-24.

4.      The shift-to-shift operation of the Birth Center is overseen by assigned "charge" or "lead" nurses. The charge nurse, for example, is responsible for creating nursing assignments for each shift. Mugo Dep. 29:19-31:4.

5.      While not all nurses that work on the unit are trained to provide care for laboring patients, those nurses that are trained to do so are expected to provide care for patients in all areas of the unit, including antepartum and postpartum patients. Mugo Dep. 29:19-25.

**B.      Kadlec's Policies, Procedures, and Collective Bargaining Agreement**

6.      The 2019-2022 Collective Bargaining Agreement between Kadlec and WSNA states:

- "The first ninety (90) calendar days of employment for fulltime nurses and the first one hundred and eight (180) calendar days of employment for part-time and per diem nurses shall be an Introductory Status period. After either ninety (90) or one hundred and eighty (180) calendar days of continuous employment,

---

[1] Cited portions of the Deposition of Trinity Mugo are attached to the Declaration of Rosemary Alito, filed herewith, as Exhibit A.

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 2
CASE NUMBER 4:23-CV-05082-JAG

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

as applicable, the nurse shall be considered a regular employee unless specifically advised by the Hospital in writing. The Introductory Status may be extended for not more than ninety (90) calendar days." Alito Decl. ¶ 9, Ex. H § 4.1

- "A standard work day shall consist of eight (8), ten (10), or twelve (12) hours work to be completed within eight and one-half (8 ½), ten and one-half (10 ½), or twelve and one-half (12 ½) consecutive hours, respectively, with a thirty (30) minute meal period on the nurse's own time if the nurse is relieved of duties during this time. If the nurse is not relieved of duties or may not leave the unit for the meal period this shall be paid time. Nurses working eight (8) or ten (10) hour workdays shall receive two (2) fifteen (15) minute rest breaks spaced appropriately apart. Nurses working twelve (12) hour shifts shall receive three (3) fifteen (15) minute breaks spaced appropriately apart." *Id.* at §§ 5.1-5.2.

  7.    Kadlec's Licensure, Registration, and Certification policy states:

- "Caregivers occupying job classifications requiring Washington State licensure, registration or certification must maintain a current license, etc. as required by the job class and applicable state law." Alito Decl. ¶ 10, Ex. I at 1 (License, Registration, Certification policy)

- "It is the responsibility of the caregiver to ensure compliance of the required professional credential during the entire period of employment. It is the responsibility of the core leader to ensure caregivers are not permitted to work if a required credential is not valid, verified or otherwise in good standing in accordance with this policy." *Id.*

- "For the purpose of this policy, required credentials are those listed on the job descriptions." *Id.*

- "It is the caregivers' responsibility to complete the renewal process in a timely manner." *Id.* at 2.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

- "For expiration's that occur when a caregiver is on an approved leave of absence, the Core Leader must be able to verify tracking tool an acceptable documentation before the caregiver returns to work. Renewal must be verified prior to the caregivers's return." *Id.*

- "The Caregiver is responsible for maintaining valid credentials as required by the job description, regulatory agencies and/or law regardless of whether or not they have received reminders of upcoming expiration's from Evercheck." *Id.*

- "If the license, certification, or registration has not been renewed, caregivers will be removed from the work schedule until the verification process is completed. Caregivers who do not maintain or renew required license, certification or registration are subject to the disciplinary process up to and including termination." *Id.* at 3.

8.   Kadlec's Separation of Employment policy states:

- "Caregivers may choose to voluntarily separate from their employment at any time. A written notice (hard copy or by email) which states the effective date of the separation as well as the reason for the separation should be sent to the caregiver's core leader." Alito Decl. ¶ 11, Ex. J at 1(Separation of Employment policy)

- "Non-exempt caregivers are expected to give 14 to 21 calendar days of written notice for voluntary separation." *Id.*

- "Core leaders have the discretion to release the caregiver from work duties during the notice period. In consultation with human resources, the facility reserves the right to accept a resignation and recognize the separation date as any date it chooses between the date the resignation is submitted and the date designated by the caregiver as the last day of employment." *Id.*

9.   Kadlec's Meal and Break Periods policy states:

- "In keeping with our mission and values, the facility encourages all caregivers to take appropriate meal and break periods during the workday. In addition, it is

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 4
CASE NUMBER 4:23-CV-05082-JAG

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

the policy for the facility to comply with all applicable laws concerning meal and break periods." Alito Decl. ¶ 12, Ex. K at 1 (Kadlec's Meal and Break Periods policy).

- "A caregiver who works more than 5 hours in a regular shift is entitled to at least one 30-minute unpaid and uninterrupted meal period to be taken between the second and fifth hours of work." *Id.*

- "To ensure that the meal period is uninterrupted, caregivers beginning a meal period should hand over any phone/pager/duties to the relief person or utilize another arrangement specific to the unit. If caregivers anticipate any interruption in their meal period, they should speak with their core leader in advance of the meal period to determine if assistance can be provided." *Id.*

- "The mealtime is unpaid as long as a caregiver is free from any duties for the entire meal period. The caregiver may be required to remain on the work site during an unpaid meal break as long as no work is performed or expected be performed during this time." *Id.*

- "Meal times must be compensated whenever caregivers are: 1. Required or allowed to remain on duty; 2. Required to remain on-call with the expectation they will return to duty if called or paged, regardless of whether there is actually a call or page; or 3. Called back to work during the meal period even if not normally on call during this time." *Id.* at 2

- "Caregivers who are RNs … and who are engaged in patient care and the delivery of clinical services to patients, will be provided a paid 15-minute rest break for each four hours of working time, which must be continuous and uninterrupted. If a rest break is interrupted, caregivers must take a new continuous 15-minute rest break." *Id.*

- "Caregivers are expected to return on time from meal periods and breaks as well as to take breaks and meal periods as described in this policy." *Id.* at 3.

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 5
CASE NUMBER 4:23-CV-05082-JAG

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

- "Caregivers who are unable to take their break or meal periods must notify their core leader or designated charge/lead promptly so that the core leader can reschedule the break/meal period or otherwise ensure that the caregiver receives proper compensation." *Id.*

- "In the event of a missed meal or break period, the caregiver is to notify their core leader in accordance with departmental procedures and at the end of shift, attest to the missed meal period or break(s) in the facility's timekeeping system." *Id.*

- "Caregivers not following this policy may be subject to corrective or disciplinary action, up to and including termination." *Id.*

    10.    Kadlec's Release of Caregiver Information policy states:

- "All requests for information regarding former or current caregivers must be directed to human resources. Requests for letters of recommendation must also be directed to human resources." Alito Decl. ¶ 13, Ex. L at 2 (Kadlec's Release of Caregiver Information policy).

- "For former caregivers, prospective employers can obtain the following information upon request and receipt of an authorization form: 1. Last Position Held 2. Dates of Employment (hire date and separation date) 3. FTE Status." *Id.*

    **C.    Plaintiff's Employment with Kadlec**

    11.    In late 2018, Kadlec sought applicants for a .45 full-time equivalent night shift nursing position in its Birth Center. The .45 full-time equivalent position works three twelve-hour shifts every two weeks. Mugo Dep. 10:14-11:14.

    12.    Ms. Mugo served as the hiring manager for the .45 full-time equivalent night shift nursing position. Ms. Mugo specifically sought an experienced nurse to fill the open position. Mugo Dep. 10:14-12:16.

    13.    Following an application and interview process, Ms. Mugo decided to hire Plaintiff, and Kadlec extended Plaintiff an offer of employment for this .45

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 6
CASE NUMBER 4:23-CV-05082-JAG

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

full-time equivalent night shift nursing position in October 2019. Alito Decl. ¶ 14, Ex. M (October 2019 offer letter); Mugo Dep. 12:8-16.

14.     Plaintiff worked in Kadlec's Birth Center from January 21, 2019, to November 4, 2021. *See* Alito Decl. ¶ 19, Ex. S (Plaintiff's Time Detail Records).

15.     New part-time caregivers at Kadlec are subject to a 180-day introductory period. During that period, the caregiver's performance is evaluated through a series of "check ins" with the caregiver's manager. Alito Decl. ¶ 9, Ex. H § 4.1; Mugo Dep. 19:11-20:2.

16.     Ms. Mugo met with Plaintiff twice during her introductory period, once in May and once in July 2019, to discuss Plaintiff's performance. Ms. Mugo documented discussing concerns that had been raised with her regarding Plaintiff's ability to follow Kadlec's policies and procedures. In turn, Ms. Mugo documented that Plaintiff raised concerns she had with "team dynamics" and feeling that "she is under a microscope." Mugo Dep. 21:16-24:19; Alito Decl. ¶ 15, Ex. N (Introductory Performance and Development Form).

17.     Following the July 2019 meeting, Ms. Mugo extended Plaintiff's introductory period. The introductory period was initially extended until August 16, 2019, but was again extended to November 2019 when Plaintiff went out on leave in August 2019. Plaintiff's introductory period officially concluded on November 28, 2019. *See* Alito Decl. ¶ 15, Ex. N (Introductory Performance and Development Form); Mugo Dep. 27:2-11.

18.     Ms. Mugo completed two additional evaluations of Plaintiff's performance prior to her resignation, one in March 2020 and one in April 2021. In both evaluations, Ms. Mugo documented that Plaintiff was "meeting the expectations of the role" and affirmed that Plaintiff had not been subject to corrective action or placed on a performance improvement plan during the relevant

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 7
CASE NUMBER 4:23-CV-05082-JAG

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

review period. Alito Decl. ¶ 16, Ex. O (2020 Performance and Development Form); *id.*, ¶ 17, Ex. P (2021 Performance and Development Form).

19.    During her employment, Plaintiff took two medical leaves of absence. In September 2019, Plaintiff took a two-month leave of absence, returning to work in late November 2019. Then, in early January 2021, Plaintiff took a second medical leave of absence, which lasted approximately five months. Alito Decl. ¶ 18, Ex. Q (2019 Sedgwick Claim Letter); *id.*, Ex. R (2021 Sedgwick Claim Letter).

20.    Kadlec uses Sedgwick, a third-party vendor, to administer its caregiver leave programs. Alito Decl. ¶ 18, Exs. Q, R.

21.    In 2019, Sedgwick approved Plaintiff for short-term disability leave but informed Plaintiff that she did not qualify for FMLA leave as she did not meet FMLA's "12 month length of service requirement." *See* Alito Decl. ¶ 18, Ex. Q (2019 Sedgwick Leave Letter).

22.    At the time of Plaintiff's leave in 2019, Plaintiff had been employed by Kadlec for approximately 9 months. *See* Alito Decl. ¶ 18, Ex. Q; *see also id.* ¶ 19, Ex. S (Plaintiff's Time Detail Records).

23.    In 2021, Sedgwick approved Plaintiff for short-term disability leave but informed Plaintiff that she did not qualify for FMLA leave as she did not meet "FMLA's 1250-hours worked requirement." Alito Decl. ¶ 18, Ex. R (2021 Sedgwick Leave Letter).

24.    At the time of Plaintiff's leave in 2021, Plaintiff had worked less than 700 hours at Kadlec during the past year. Alito Decl. ¶ 18, Ex. R; *see also id.* ¶ 19 Ex. S (Plaintiff's Time Detail Records).

25.    While Plaintiff was on leave in 2021, Plaintiff's Basic Life Support ("BLS") certification expired. Deposition of Tyanna Averett ("Averett Dep."),

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 8
CASE NUMBER 4:23-CV-05082-JAG

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

120:8-122:3; *see also* Alito Decl. ¶ 20, Ex. T (Evercheck notification regarding expired certification).[2] Nurses in the Birth Center are required to maintain active BLS certifications as a requirement of their position. Alito Decl. ¶ 10, Ex. I; *see also id.*, ¶ 23, Ex. X (Mugo email regarding certification).

26.    On May 22, 2021, the Birth Center's assistant nurse manager, Michelle Bunger, texted Plaintiff the following:

- "Thanks Tyanna! It might be good to come in during the day of the 1, 2, or 3rd. Get caught up on health stream, QStream, ect. To confirm I have you working the 4-5-6 and 11-12-13 for the next schedule starting tomorrow. Thanks again."

Alito Decl. ¶ 21, Ex. U at 3 (Ms. Bunger's texts with Plaintiff).

27.    On June 7, 2021, Ms. Bunger texted Plaintiff the following:

- "Hello were you able to catch up on your q streams? They are going to start suspending people soon."

*Id.* at 1 (Ms. Bunger's texts with Plaintiff).

28.    On June 25 and July 6, 2021, the Birth Center's training coordinator, Tereisa Pleyo provided Plaintiff with information regarding how to complete Plaintiff's BLS certification renewal via email. *See* Alito Decl. ¶ 22, Exs. V, W (Ms. Pleyo's emails regarding BLS certification).

29.    On July 26, 2021, Ms. Mugo emailed Plaintiff regarding her BLS certification. In that email, Ms. Mugo stated:

- "I have confirmed with HR when you returned from your leave you should have completed the BLS prior to returning to the floor to take care of patients. You are required to catch up on HES, and Qstreams when you missed while on leave as soon as you return."

---

[2] Cited potions of the Deposition of Tyanna Averett are attached as Exhibit B to the Declaration of Rosemary Alito.

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 9
CASE NUMBER 4:23-CV-05082-JAG

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

- "Today is Monday 7/26/2021 and I am officially moving you into unpaid time/ suspension until this is completed. You are not allowed to use PTO while in suspension unpaid time."

- "That being said the shift you have worked without a current BLS have been paid and you have one shift on this current pay period that will be paid. Any remaining shift that you miss if you are unable to complete you BLS prior to Friday 7/30/2021 will be unpaid."

Alito Decl. ¶ 23, Ex. X (Ms. Mugo's July 26, 2021, email to Plaintiff).

30.    On July 29, 2021, Ms. Mugo emailed Plaintiff regarding her BLS certification. In that email, Ms. Mugo stated:

- "I have texted you today to see if you have completed the training as of 1525 on 7/29/2021 it appears you have not accessed the assigned HES for the BLS Heart Code. I reviewed Evercheck and I do not see a new BLS uploaded."

- "This email is to notify you if you do not complete the required BLS training by Monday 8/2/2021 4pm your employment MAY be terminated. I want to reiterate and I have included the emails that we notified you with 1st on 6/25, phone call on 7/21, email on 7/22, phone call and email on 7/26. It is the caregivers responsibility to maintain their certification and licenses in a timely manner, you have been back from leave since 6/3/2021 working with an expired BLS, this places the organization in jeopardy."

Alito Decl. ¶ 23, Ex. Y at 1-2 (Ms. Mugo's July 29, 2021, email to Plaintiff).

31.    On July 26, 2021, Plaintiff was placed into unpaid time/ suspended status pending the renewal of her BLS certification. While in "unpaid time/ suspended" status, Plaintiff missed previously scheduled shifts on July 30, July 31, and August 1, 2021. Alito Decl. ¶ 23, Ex. X, Y; *id.* ¶ 19, Ex. S (Plaintiff's Time Detail Records); Averett Dep. 122:2-126:20.

32.    Plaintiff submitted proof of a renewed BLS certification to Kadlec on

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

August 2, 2021, and was returned to the work schedule. Alito Decl. ¶ 18, Ex. Y at 1 (Plaintiff's August 2, 2021 email).

33.    Plaintiff did not work her scheduled shift on August 9, 2021, as she had not received notice from Kadlec that she was allowed to return to work prior to the start of that shift. Averett Dep. 178:11-179:16.

34.    Plaintiff grieved her suspension through WSNA, arguing that she should have been provided time upon her return from leave to complete her recertification during her scheduled working hours. Averett Dep. 177:20-179:16; Alito Decl. ¶ 24, Ex. Z (Plaintiff's Step 1 Grievance Form)

35.    WSNA pursued the grievance to Step 2, but did not elevate it further after Kadlec agreed to pay Plaintiff for the shift she missed on August 9, 2021, and confirmed that Plaintiff (1) would be paid for the time spent completing her education requirements, and (2) had not received any "documented discipline" for failing to complete the recertification process in a timely manner. Alito Decl. ¶ 24, Exs. AA, BB, CC (Step 1 Response, Step 2 Grievance Form, Step 2 Response).

36.    On September 15, 2021, Ms. Mugo requested to meet with Plaintiff to discuss "some patient care and time and attendance concerns I have from the following shifts. 8/23, 9/11, 9/12." Alito Decl. ¶ 6, Ex. E (Emails regarding October 1 Meeting).

37.    This meeting was scheduled for October 1, 2021, and was attended by Ms. Mugo, an HR representative from Kadlec, Plaintiff, and Plaintiff's union representative. Alito Decl. ¶ 6, Ex. E (Emails regarding October 1 Meeting); Averett Dep. 190:6-18; Mugo Dep. 47:24-48:5.

38.    Plaintiff testified that she "finally unleashing [her] emotions" at Ms. Mugo during the October 1, 2021, meeting. Averett Dep. 190:6-18.

39.    Four days later, on October 5, Plaintiff sent Ms. Mugo a formal

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

resignation letter, providing notice that she intended for her last day to be November 5, 2021. Alito Decl. ¶ 25, Ex. DD (Plaintiff's Resignation Letter).

40.     In her four-page resignation letter addressed to Ms. Mugo, Plaintiff stated the following:

- "You pulled me into your office after I had only been working here for 4 months and proceeded to tell me how much I don't amount to much. You questioned and highly doubted me that I truly have this type of experience. You belittled me through so many words and questioned my entire career experience. You truly DO NOT KNOW who I am. For as hard as I have worked in all these years and the countless people I have touched, both patients, coworkers, doctors, providers, techs, etc., I was in shock! Friends and family and especially my L&D family from all over were in shock for not only how you treated me that day but for even stating such belittling, disqualifying, and devaluing who I was as a person. Nobody deserve to be bullied like that EVER!" Alito  Decl. ¶ 25, Ex. DD at 2 (Plaintiff's Resignation Letter).

- "I turned to a few people here in the unit because I needed strength to move forward only to learn that this behavior was very typical of you to all the new nurses that entered Kadlec. That if I would just hold on, things would start to be better after I had endured it for about two years. This is defined as a form of hazing." *Id.* at 3.

- "From this day, you have not ceased to find one fault after another with me. You have questioned my honesty and integrity for which I wrote down perfect notes of time knowing very well I would hear from you later. I stand proud to defend my name and honor my character. Always have and will continue to do so. Never was anything positive and uplifting. We have not had many encounters since this traumatic day 2 years ago. I do not trust you with my emotional well-being." *Id.* at 3.

- "Between the leadership, lack of professionalism, poor morale, and just no genuine love shared amongst all, this environment is left to be toxic. Patients

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 12
CASE NUMBER 4:23-CV-05082-JAG

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

are seeing this. Staff from all over the hospital are noticing this about our unit. Such a sad and unfortunate situation. I pray for the benefit of all that people start to listen and feel the hearts from all those that stand with me in how we all feel working here. Kadlec has some AMAZING nurses on this unit. Many of which are not fully happy in this environment and are just surviving. They have spoken words of understanding, feelings of empathy, and admit that this is a toxic environment." *Id.* at 4.

- "I constantly work in fear of retaliation from those that I should have a trusting relationship with such as you and the other leaders of this unit. Not only has the fear evolved and intensified throughout the time I have worked here, but many of us are treated with disrespect and unfairness. I have been a labor nurse for all these years and yet my success and failure lays in the hands of girls that have no idea the damage they are doing one shift to another. Many of us are stuffed into a corner of postpartum or even antepartum solely on the segregation of popularity." *Id.*

41.     The following day, Ms. Mugo accepted Plaintiff's resignation and informed Plaintiff that, pursuant to Kadlec's separation policy, Plaintiff's resignation would be effective on November 4, 2021. Alito Decl. ¶ 26, Ex. EE (October 2021 emails between Ms. Mugo and Plaintiff).

### D.     Plaintiff's Meal and Rest Breaks

42.     Regarding rest and meal breaks, Plaintiff testified:

- "I remember a couple times I went up to a couple – like day shift charge nurses because the night shift charge nurse had left or – it was like 30 minutes before our shift was over and I would say, Just so you know, I haven't got a lunch today. And they're like what? What? And I was like, uh, yeah, but there hasn't been anybody that's come and checked on us either and I don't have time to run over to the other side and say, oh, P.S. by the way, I haven't got a lunch yet. It was, why didn't you tell us? Well, there you go." Averett Dep. 224:9-23.; *see*

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*also* Alito Decl. ¶ 27, Ex. FF (Plaintiff's Orientation Form Acknowledging review of Policies).

- "Q. And then when you missed a meal break, what did you do, if anything? A. Well, normally I would just clock a no lunch at the end of the day." Averett Dep. 219:12-15.

43.     Plaintiff's time records indicate that Plaintiff recorded a missed meal period on 17 shifts and missed breaks on 18 shifts during her employment with Kadlec. *See* Alito Decl. ¶ 19, Ex. S (Plaintiff's Time Detail Records).

44.     Plaintiff's time records indicate that 45 minutes of additional time was added to Plaintiff's "hours worked" for any shift that Plaintiff attested she had missed a break. *See id.*

45.     Plaintiff's time records reflect that Plaintiff was paid in full for all working time any shift in which she attested that she did not take an unpaid meal period. *See id.*

**E.     Plaintiff's Post-Kadlec Job Search**

46.     Several months after resigning her position at Kadlec, Plaintiff began working with AMN Healthcare, Inc., an employment agency, to find contract work as a travel nurse. Averett Dep. 11:21-12:10.

47.     As part of the job search process, AMN informed Plaintiff that she needed to provide professional references from the "last two years." Averett Dep. 15:12-22.

48.     Plaintiff provided AMN Healthcare, Inc. with a list of references, which included two former coworkers from Kadlec, Jane Zyph and Amy Gardner. Averett Dep. 15:12-16:6, 23:4-26:20.

49.     When contacted by AMN, Ms. Zyph evaluated Plaintiff's

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

performance in a variety of categories as "does not meet standards," and stated that she would not "rehire" Plaintiff. *See* Alito Decl. ¶ 7, Ex. F (Professional Reference Form).

50.     Ms. Zyph testified that her opinion of Plaintiff's "professional competency" changed based on "incidents that [she] observed." Deposition of Jane Zyph at 29:19-30:7, 32:10-19, 34:23-36:21.[3] For example, Ms. Zyph testified that Plaintiff "misused the emergency light multiple times therefore causing the other nurses to leave their patients," specifically referencing an incident where Plaintiff "was in [an] isolation room and used the emergency light multiple times for people to bring her items instead of using her Nextel or cell phone for just the call light." *Id.* at 34:32-36:21.

51.     When contacted by AMN, Ms. Gardner evaluated Plaintiff's performance in a variety of categories as "does not meet standards," and stated that she would not "rehire" Plaintiff. *See* Alito Decl. ¶ 8, Ex. G (Professional Reference Form).

52.     Ms. Gardner testified that her evaluation of Plaintiff was based on her personal observations and conversations with others in the Birth Center. Deposition of Amy Gardner at 16:24-17:5.[4] For example, Ms. Gardner testified that she did not believe Plaintiff met standards for professionalism and teamwork, because she observed Plaintiff having "outbursts about assignments at the nurses station," and refusing "to take care of certain patients." *Id.*

---

[3] Cited portions of the Deposition of Jane Zyph are attached to the Declaration of Rosemary Alito as Exhibit C.

[4] Cited portions of the Deposition of Amy Gardner are attached to the Declaration of Rosemary Alito as Exhibit D.

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 15
CASE NUMBER 4:23-CV-05082-JAG

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

1    DATED this 13th day of December, 2024

2                                    K&L GATES LLP

3

4

5                                    By: /s/ Benjamin Moore
                                          Benjamin Moore, WSBA # 55526

6
                                     925 Fourth Avenue
7                                    Suite 2900
                                     Seattle, Washington 98104-1158
8                                    Tel: +1 206 370 6553
                                     Fax: +1 206 370 6125
9                                    Email:      ben.moore@klgates.com

10

11                                   By: /s/ Rosemary Alito
                                          Rosemary Alito, pro hac vice
12
                                     One Newark Center, Tenth Floor
13                                   Newark, New Jersey 07102
                                     Phone: +1 973 848 4022
14                                   Fax: +1 973 848 4001
                                     rosemary.alito@klgates.com
15

16

17                                   Attorneys for Defendant Kadlec
                                     Regional Medical Center
18

19

20

21

22

23

24

25

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1

## **CERTIFICATE OF SERVICE**

2

3    I hereby certify that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the persons listed below:

4

5

6    **Attorney for Plaintiff**                    **Attorneys for Defendant**
William Edelblute                            Paula L. Lehmann, WSBA
7    Attorney at Law PPLC                         #20678
1030 N. Center Parkway                       paulalehmann@dwt.com
8    Kennewick WA 99336                          DAVIS WRIGHT TREMAINE
Ph. 509-737-0073                            LLP
9    Fax: 509-222-2223                           929 108th Avenue NE, Suite
1500
10
Bellevue, WA 98004-4786
11   **Attorneys for Defendant**                  (425) 646-6100 Telephone
Kathryn S. Rosen, WSBA                       (425) 646-6199 Facsimile
12   #29465
katierosen@dwt.com
13   Katie Loberstein, WSBA #51091
katieloberstein@dwt.com
14   DAVIS WRIGHT TREMAINE
LLP
15
920 Fifth Avenue, Suite 3300
16   Seattle, WA 98104-1610
(206) 622-3150 Telephone
17   (206) 757-7700 Facsimile

18

19

20   Dated this 13th day of December, 2024

21                         By:    /s/ Benjamin Moore
Benjamin Moore, WSBA # 55526
22

23

24

25

26

DEFENDANT'S STATEMENT OF
MATERIAL FACTS - 17
CASE NUMBER 4:23-CV-05082-JAG

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022